SLIP OPINION

Cite as 2015 Ark. 285

# SUPREME COURT OF ARKANSAS

No. CV-14-1056

| | |
|---|---|
| GARY SANFORD; LINDA YEAGER; WAYNE LILLEY; LILLEY PAINT CO., INC., AN ARKANSAS CORPORATION; AND AIRMOTIVE, INC., AN ARKANSAS CORPORATION<br><br>APPELLANTS<br><br>V.<br><br>LARRY WALTHER, DIRECTOR, ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION<br>APPELLEE | Opinion Delivered June 25, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT<br>[NO. 60CV-10-3462]<br><br>HONORABLE WENDELL GRIFFEN, JUDGE<br><br>AFFIRMED. |

**JIM HANNAH, Chief Justice**

Appellants, Gary Sanford, Linda Yeager, Wayne Lilley, Lilley Paint Co., Inc., and Airmotive, Inc., appeal an order of the Pulaski County Circuit Court dismissing their complaint brought against Richard Weiss, in his official capacity as Director, Arkansas Department of Finance & Administration ("DF&A"),[1] in which they alleged illegal-exaction claims and due-process violations. We affirm the circuit court's order.

On November 1, 2013, appellants filed a "Second Amended & Restated Complaint for Declaratory and Injunctive Relief Against Illegal Exactions Imposed by" DF&A. Appellants alleged that DF&A's method of imposing, levying, and collecting interest on

---

[1]In January 2015, Weiss was succeeded by the current director, Larry Walther.

certain state tax-delinquencies is unlawful, unconstitutional, and usurious and constitutes an illegal exaction in violation of article 16, section 13, of the Arkansas Constitution.[2] DF&A filed a motion to dismiss the second amended complaint pursuant to Arkansas Rule of Civil Procedure 12(b)(1) and (6), alleging that appellants had failed to plead facts necessary to establish subject-matter jurisdiction and that appellants had failed to plead facts on which relief may be granted. The circuit court set forth the facts as follows that must be taken as true in evaluating appellants' second amended complaint:

(a) Plaintiffs are taxpayers within the meaning of Arkansas law;

(b) Plaintiffs are persons who are or have been indebted to the State of Arkansas for delinquent tax debts and against whom interest on such state tax debts has been imposed or collected by the Defendant;

(c) Interest was assessed on some Plaintiffs prior to the filing of certificates of indebtedness;

(d) Defendant filed certificates of indebtedness against the plaintiffs with respect to the tax delinquencies; and

(e) Defendant assessed interest on Plaintiffs' tax delinquencies after the filing of certificates of indebtedness.

Following a hearing on the motion to dismiss, the circuit court entered an order dismissing with prejudice appellants' second amended complaint.

---

[2]Count I(A)(1) of the second amended complaint alleged an illegal exaction based on the violation of Arkansas statutes in the imposition of interest upon tax "underpayments," as that term is defined in Arkansas Code Annotated section 26-18-104(18) (Repl. 2012). Count I(A)(2) alleged an illegal exaction challenging DF&A's imposition of postjudgment interest. Count I(B) alleged an illegal exaction based on the imposition of judgment interest upon certificates of indebtedness in violation of the usury prohibitions in the Arkansas Constitution.

SLIP OPINION

When reviewing a circuit court's order granting a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *E.g.*, *Downing v. Lawrence Nursing Hall Ctr.*, 2010 Ark. 175, at 6, 369 S.W.3d 8, 13. In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *E.g.*, *Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, at 4, 372 S.W.3d 324, 329. Our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *E.g.*, *Biedenharn v. Thicksten*, 361 Ark. 438, 441, 206 S.W.3d 837, 840 (2005) (citing Ark. R. Civ. P. 8(a)(1)). In addition, we have made clear that we treat only the *facts* alleged in a complaint as true for purposes of a motion to dismiss but not a party's theories, speculation, or statutory interpretation. *E.g.*, *Billy/Dot, Inc. v. Fields*, 322 Ark. 272, 275, 908 S.W.2d 335, 336 (1995). Finally, our standard of review for the granting of a motion to dismiss is whether the circuit court abused its discretion. *E.g.*, *Ark. Dep't of Envtl. Qual. v. Oil Producers of Ark.*, 2009 Ark. 297, at 5, 318 S.W.3d 570, 573. As to issues of law presented, our review is de novo. *E.g.*, *Dollarway Patrons for Better Schs. v. Dollarway Sch. Dist.*, 374 Ark. 92, 94, 286 S.W.3d 123, 125 (2008).

## I. *Illegal Exaction*

Appellants first contend that the circuit court erred in dismissing their complaint because they pled viable illegal-exaction claims under article 16, section 13, of the Arkansas Constitution. DF&A responds that, absent an actual challenge to the underlying tax, appellants may not avail themselves of the constitutional class-action provisions of an illegal

SLIP OPINION

tax type of illegal exaction. To resolve this issue, we must answer the following question:

> Does an action for an illegal exaction arise under article 16, section 13, of the Arkansas Constitution when an Arkansas taxpayer claims that the interest imposed, levied, or collected on a tax delinquency is illegal but does not claim that the underlying tax itself is illegal?

An illegal-exaction suit is a constitutionally created class action. Article 16, section 13, of the Arkansas Constitution states that "[a]ny citizen of any county, city or town may institute suit, in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." An illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law. *E.g.*, *Brewer v. Carter*, 365 Ark. 531, 534, 231 S.W.3d 707, 709 (2006). Two types of illegal-exaction cases can arise under article 16, section 13: "public funds" cases, in which the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent, and "illegal tax" cases, in which the plaintiff asserts that the tax itself is illegal. *E.g.*, *Bowerman v. Takeda Pharms. U.S.A.*, 2014 Ark. 388, at 4, 442 S.W.3d 839, 842.

Appellants contend that this court has defined illegal exactions in a variety of forms and has recognized that illegal-exaction suits are not limited to matters of "taxation" or "expenditure of public funds." The cases they cite, however, do not support their contention. *See, e.g.*, *City of North Little Rock v. Graham*, 278 Ark. 547, 647 S.W.2d 452 (1983) (holding that a three-dollar "public safety fee" added to residents' water bills that was exacted to raise revenue to pay additional money for services already in effect was a "tax" and not a "fee"); *Starnes v. Sadler*, 237 Ark. 325, 372 S.W.3d 585 (1963) (holding that, under article 16, section 13, a taxpayer was entitled to injunctive relief for the illegal spending of

public funds when members of the General Assembly violated the dual-officeholder prohibition in article 5, section 10, of the Arkansas Constitution).

Alternatively, appellants contend that, even if their action may be maintained only by challenging an illegal tax,[3] then the interest charged by DF&A constitutes an illegal tax. Relying on this court's decision in *City of Hot Springs v. Vapors Theatre Restaurant, Inc.*, 298 Ark. 444, 769 S.W.2d 12 (1989), appellants claim that interest, like a tax, is a "burden imposed by a government upon a taxpayer for the use and benefit of that government." Citing *Harris v. City of Little Rock*, 344 Ark. 95, 40 S.W.3d 214 (2001), appellants contend that, even though the exaction at issue is labeled "interest," the exaction is really a tax because the government imposes the interest for general revenue purposes. Finally, appellants point to provisions in the Arkansas Code to support their contention that the General Assembly defines both taxes and interest as revenue for taxation purposes. *See* Ark. Code Ann. § 26-18-208(8) (Repl. 2012) (stating that "[a]ll penalties or additions to tax and interest imposed by any state tax law are assessable and collectible by the director as a part of the tax due and owing"); Ark. Code Ann. § 19-6-102 (Repl. 2007) (referring to taxes, licenses, fees, permits, assessments, royalties, leases, rents, fines, interest, and penalties for the support of the state government and its agencies, institutions, boards, and commissions as revenues or other income that are required by law to be deposited into the State Treasury).

*City of Hot Springs v. Vapors* and *Harris v. City of Little Rock* do not support appellants'

---

[3]It is undisputed that appellants are not pursuing a "public funds" type of illegal-exaction claim.

position that "interest is a tax for illegal-exaction analysis." The issue in *Vapors* was whether the City of Hot Springs (City) could collect a 3 percent hospitality tax pursuant to an ordinance enacted by authority of Arkansas Code Annotated section 26-75-602 (1987), in addition to the customary 10 percent mixed-drink tax collected by the City under authority of Arkansas Code Annotated section 3-9-213 (1987). The trial court ruled that it could not impose the hospitality tax in addition to the mixed-drink tax. The City argued on appeal that the trial court erred because "the [hospitality] tax is not a tax." 298 Ark. at 446, 769 S.W.2d at 2. Its argument was based on section 2 of Act 976 of 1985, not codified, but mentioned in the publishers notes to Arkansas Code Annotated section 26-75-602, which provides, "This tax is not a 'tax' as 'taxes' are ordinarily understood and intended for governmental services and support, but is a special levy paid by persons, and collected by entities, peculiarly associated with and benefited by tourism." *Id*. at 446–47, 769 S.W.2d at 2. We rejected the City's contention, stating, "The statutory language is farcical. Any burden imposed by a government upon a taxpayer for the use and benefit of that government is a tax, whether labeled tax, levy, duty, custom, gabelle, or anything else." *Id*. at 447, 769 S.W.2d at 2. Thus, despite the attempt by the General Assembly to characterize the hospitality tax as something other than a tax, this court recognized that the hospitality tax, which was imposed by the City upon taxpayers for the use and benefit of the City, was indeed a tax.

In *Harris*, a taxpayer contended that an illegal exaction occurred when the City of Little Rock (Little Rock) raised its user fees at its recreational facilities and pledged their proceeds to repay the bonds for the William Jefferson Clinton Presidential Park. She argued

that the increase in fees was not related to the services provided and that the fees were actually taxes that Little Rock lacked the authority to impose without prior voter approval. In explaining the difference between a tax and a fee, we stated,

> "The distinction between a tax and a fee is that government imposes a tax for general revenue purposes, but a fee is imposed in the government's exercise of its police powers." *City of Marion v. Baioni*, 312 Ark. 423, 425, 850 S.W.2d 1, 2 (1993) (citing *City of North Little Rock v. Graham*, 278 Ark. 547, 647 S.W.2d 452 (1983)). A city may assess a fee for providing a service without obtaining public approval; however, a city cannot levy a tax unless it has received approval by the taxpayers. *Barnhart v. City of Fayetteville*, 321 Ark. 197, 900 S.W.2d 539 (1995) (citing Ark. Code Ann. § 26-73-103(a) (1987)). A governmental levy of a fee, in order not to be denominated a tax by the courts, must be fair and reasonable and bear a reasonable relationship to the benefits conferred on those receiving the services. *Id*.; *Baioni*, 312 Ark. 423, 850 S.W.2d 1. The fact that the ordinance labels the exaction a "fee," not a "tax," is not binding; rather, we look to the true character of the levy to determine whether it is a fee or a tax. [*Baioni*, 312 Ark. 423, 850 S.W.2d 1].

*Harris*, 344 Ark. at 105, 40 S.W.3d at 221.

The instant case, of course, does not involve the issue of whether a certain exaction is a fee or a tax. Still, even if we were to apply the "true character" test to the facts of this case, we would reject appellants' contention that its application mandates a finding in their favor.

Taxes and interest are not the same. "Taxes are enforced contributions exacted pursuant to statutory authority." *Miles v. Gordon*, 234 Ark. 525, 529, 353 S.W.2d 157, 160 (1962). Interest is a charge for the use of tax money that the government was deprived of using due to late payment. *See Jones v. United States*, 371 F.2d 442, 450 (Ct. Cl. 1967); *see also Owens v. Comm'r of Internal Revenue*, 125 F.2d 210, 213 (10th Cir. 1942) (stating that interest is intended to compensate the government for delay in payment of the tax). Here, the "true

SLIP OPINION

character" of the exaction is to compensate the State for the delay in the payment of the tax.

Unlike taxes, interest on state-tax delinquencies is not levied generally on all taxpayers for the purpose of raising revenue. Although the proceeds of any interest paid on delinquent tax debts are characterized as general revenue by the Revenue Stabilization Law, Arkansas Code Annotated sections 19-5-101 through -1254 (Repl. 2007 & Supp. 2013), the interest is not levied to pay for maintaining traditional government functions and services. And while interest is assessable and collectable as a part of the tax, *see, e.g.*, Ark. Code Ann. § 26-18-208(8), "the interest on a tax is not a tax, but is something in addition to the tax," *see Penrose v. United States*, 18 F. Supp. 413, 415 (E.D. Pa. 1937).

We conclude that an action for an illegal exaction does not arise under article 16, section 13, of the Arkansas Constitution when an Arkansas taxpayer claims that the interest imposed, levied, or collected on a tax delinquency is illegal but does not claim that the underlying tax itself is illegal. Therefore, we affirm the circuit court's dismissal of appellants' illegal-exaction claims. Consequently, we do not address appellants' remaining illegal-exaction arguments on appeal.

## II. *Due Process*

We now turn to appellants' argument that the circuit court erred in dismissing their due-process claims. In Count II of their second amended complaint, appellants alleged that DF&A violated their due-process rights as guaranteed by the Fourteenth Amendment to the United States Constitution and article 2, sections 2, and 8 of the Arkansas Constitution, through 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, Arkansas Code Annotated

sections 16-123-101 to -108 (Repl. 2006), by failing to provide a forum by which they could challenge DF&A's assessment of the allegedly improper percentage of interest. DF&A responds that appellants failed to plead sufficient facts to demonstrate which deprivation of rights or lack of due process occurred prior to the alleged deprivation.

> In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*. The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990) (internal citations omitted) (emphasis in original).

A valid due-process claim consists of four elements: action under color of state law; a right, privilege, or immunity secured by the constitution such as property; a loss of property amounting to a deprivation; and an absence of due process. *See Parratt v. Taylor*, 451 U.S. 527, 536–37 (1981). If there is an adequate remedy under state law, there can be no due-process violation. *See Hudson v. Palmer*, 468 U.S. 517, 529–30 (1984) (stating that a person does not have a § 1983 due-process claim if state law provides an adequate remedy).

The Arkansas Tax Procedure Act, Arkansas Code Annotated sections 26-8-101 to -1006 (Repl. 2012) ("TPA"), provides a procedure that satisfies due-process requirements. *See Ross v. Martin*, 800 F.2d 808 (8th Cir. 1986). Under the TPA, certificates of indebtedness shall be issued as soon as practicable after a final assessment has been made against the

taxpayer. Ark. Code Ann. § 26-18-701(a)(1)(A). A final assessment of a tax delinquency is issued at the conclusion of the administrative-hearing process or after the time to request administrative relief from a proposed assessment has expired. Ark. Code Ann. §§ 26-18-401, -403, -405. A taxpayer may protest the determinations of the director of DF&A before or after a final assessment has been issued. A taxpayer may protest a proposed assessment under the administrative procedures of the TPA. *See id.* § 26-18-404. After the issuance of a final assessment of a final deficiency in tax that is not protested by the taxpayer or a final determination of the hearing officer or director, a taxpayer may seek judicial relief from the final determination or assessment. *See id.* § 26-18-406. In addition, a taxpayer may challenge the filing of a certificate of indebtedness. *See id.* § 26-18-811.

The TPA ensures that a hearing is available to taxpayers seeking to protest an assessment prior to the filing of a certificate of indebtedness. Appellants did not show that they were denied the ability to challenge the determinations of the director either administratively or by seeking judicial relief as authorized under the TPA. The circuit court correctly ruled that appellants failed to plead facts to support their due-process-violation claims; therefore, we affirm the circuit court's dismissal of those claims.

Affirmed.

HART, J., concurs.

*Deininger & Wingfield, P.A.*, by: *Neil Deininger* and *Reba M. Wingfield*; *Hatfield & Sayre*, by: *Eugene G. Sayre*; and *Stephen L. Curry*, for appellants.

*Joel DiPippa*, Attorney Supervisor, Revenue Legal Counsel, for appellees.