SLIP OPINION

Cite as 2015 Ark. 284

# SUPREME COURT OF ARKANSAS

No. CR–15–57

| | |
|---|---|
| JAMES MICHAEL DAVIS<br>APPELLANT | **Opinion Delivered** June 25, 2015 |
| V. | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. CR–12–66] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE BARBARA ELMORE, JUDGE |
| | <u>AFFIRMED</u>. |

**JIM HANNAH, Chief Justice**

Appellant James Michael Davis appeals an order of the Lonoke County Circuit Court convicting him of two counts of first-degree murder and sentencing him to two consecutive life sentences. For reversal, Davis argues that the circuit court abused its discretion in refusing to give his proffered jury instructions and in allowing the prosecutor to state in closing argument that one of the victims did not deserve to die. We have jurisdiction pursuant to Arkansas Supreme Court Rule 1-2(a)(2) (2014), as the jury imposed a sentence of life imprisonment. We affirm.

On the evening of December 23, 2011, Lorene Pruss returned home from work and retreated to her bedroom. Her son, Stephen Polston, and his girlfriend, Malia Fisher, heard a woman screaming on the front porch and saw their neighbor, Tracey Mills, attempt to open the door of Pruss's apartment. Polston called his mother for help. When Pruss opened the door, she saw that Mills was bleeding and grabbing her chest where she had been

stabbed. Polston gave Mills a towel, and Pruss told her to sit on a bench on the porch while she called 911. While Pruss made the 911 call, she looked out the window and saw Mills's boyfriend, Smitty, on his hands and knees begging Davis for his life. Pruss then saw Davis stab Smitty with a large knife. Davis attempted to get into Pruss's apartment but fled into some nearby woods. When Lonoke County officers arrived, Smitty, who was later identified as David Smith, died at the scene. Officers found Mills on the porch having breathing problems. Officer Steve Morgan asked Mills, "Who did this to you?" She responded, "James Davis."

Ambulance personnel arrived, pronounced Smith dead at the scene, and transported Mills, who died en route to the hospital. Lonoke County officers initiated a search for Davis, called a canine unit, and later found Davis in the woods. There, Chief Deputy Dean White found two knives, which were collected and sent to the Arkansas State Crime Laboratory. Davis's DNA matched blood on one of the knives. Detectives also collected swabs from blood splatter in Mills's apartment and from Davis's bloody clothes. The victims' DNA matched the blood found in the apartment and on Davis's clothes. Dr. Adam Craig, a medical examiner, determined after performing autopsies on the victims that stab wounds had been the cause of the victims' deaths.

On February 10, 2012, the State filed a felony information charging Davis, as a habitual offender, with two counts of first-degree murder. On October 8, 2014, the circuit court conducted a jury trial, and defense counsel argued that Davis, who had a propensity for bizarre behavior, attacked the victims in Mills's bedroom. Defense counsel proffered two

jury instructions, AMI Crim. 2d 301-A and AMI Crim. 2d 302-A, on the lesser-included offense of extreme-emotional-disturbance manslaughter, and the circuit court denied the request. After deliberations, the Lonoke County jury convicted Davis of two counts of first-degree murder and sentenced him to two consecutive life sentences to be served at the Arkansas Department of Correction. Davis timely filed his notice of appeal.

For the first point on appeal, Davis argues that the circuit court erred in refusing to instruct the jury on the lesser-included offense of extreme-emotional-disturbance manslaughter. Specifically, Davis contends that there was evidence to establish that he was provoked by actions of a sexual nature and, combined with his paranoia, this evidence sufficiently warranted the proffered manslaughter instructions. The State responds that the circuit court did not abuse its discretion by refusing to instruct the jury on extreme-emotional-disturbance manslaughter as a lesser-included offense of first-degree murder because there was no provocation by the victims to warrant the instruction.

A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Vidos v. State*, 367 Ark. 296, 239 S.W.3d 467 (2006). We have often stated that refusal to give an instruction on a lesser-included offense is reversible error if the instruction is supported by even the slightest evidence. *Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753 (2001). However, we will affirm a circuit court's decision to exclude an instruction on a lesser-included offense if there is no rational basis for giving the instruction. *Id*.

Arkansas allows a conviction of manslaughter under extreme emotional disturbance.

3

Under Arkansas Code Annotated section 5-10-104(a)(1)(A) (Supp. 2011), a person commits manslaughter if the person causes the death of another person under circumstances that would be murder, except that he or she causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. The reasonableness of the excuse is determined from the viewpoint of a person in the defendant's situation under the circumstances as he or she believes them to be. Ark. Code Ann. § 5-10-104(a)(1)(B).

A jury instruction on extreme-emotional-disturbance manslaughter under section 5-10-104(a)(1) requires evidence that the defendant killed the victim in the moment following provocation by the victim such as physical fighting, a threat, or a brandished weapon. *See Pollard v. State*, 2009 Ark. 434, 336 S.W.3d 866. *See also Davis v. State*, 2011 Ark. 433 (per curiam); *Boyle v. State*, 363 Ark. 356, 214 S.W.3d 250 (2005); *Kail v. State*, 341 Ark. 89, 14 S.W.3d 878 (2000). Such a provocation can occur when the victim is armed or is attempting to commit violence toward the defendant. *Davis*, 2011 Ark. 433, at 4 (stating that the instruction requires "a basis in fact indicating that appellant killed [the victim] in the moment following provocation in the form of physical fighting, a threat, or a brandished weapon"). When no evidence of such a provocation is presented at trial, no rational basis exists upon which the trial court could have instructed the jury on manslaughter due to extreme emotional disturbance. *Id*. Passion alone will not reduce a homicide from murder to manslaughter. *Boyle*, 363 Ark. 356, 214 S.W.3d 250.

Relying on *Jackson v. State*, 375 Ark. 321, 290 S.W.3d 574 (2009), Davis contends that his proffered jury instruction was warranted because he had been provoked by the sexual

actions of the victims and by his own paranoia. However, in *Jackson*, we affirmed the circuit

court's denial of Jackson's proffered jury instruction, stating in relevant part,

> Jackson argues that there was evidence that he was provoked to shoot Cobb
> by witnessing the altercation between Cobb and his brother [Freeman], an
> altercation that, by all accounts, Cobb was winning. He also notes that there
> was testimony that he and his brother were very close and that he looked out
> for Freeman. However, Jackson points to no evidence that Cobb's actions in
> fighting Freeman were calculated to provoke Jackson to take action.
> We also note that, after shooting Cobb in the thigh, there was a delay
> of a minute or two before Jackson fired the fatal shot to Cobb's head.
> Moreover, during this interval of time, Ward and Freeman exhorted Jackson
> not to shoot Cobb. In light of this evidence, we cannot say that the trial court
> abused its discretion in finding that no rational basis existed for giving the jury
> Jackson's requested manslaughter instruction.

*Jackson v. State*, 375 Ark. at 343, 290 S.W.3d at 589–90.

Similarly, in the present case, the record does not reveal any provocation, such as

physical fighting, a threat, or a brandished weapon, by either victim. According to the

testimony at trial, Smith was wearing a bra under his shirt, and the officers found women's

clothes, water balloons, and sexual paraphernalia in Mills's bedroom. Brandy Goodman, who

testified for the defense, stated that Davis had acted bizarrely on occasion. She stated that

Davis believed that thermostats, furnaces, and smoke detectors tried to poison him.

Goodman also testified that when Davis rummaged through her personal documents and

claimed to be her husband, she kicked Davis out of the house. These prior events to which

Goodman testified, in addition to any sexual activity that Davis witnessed in Mills's bedroom,

do not constitute sufficient provocation under our case law. For these reasons, we affirm the

circuit court's denial of Davis's proffered jury instructions.

For the second point on appeal, Davis argues that the circuit court erred in allowing

5

the prosecutor to argue that "one of the victims did not deserve to die" during the State's closing rebuttal argument. The prosecutor stated,

> But what I would ask you to do is ask this question: Does David Smith deserve to die 'cause he was wearing a bra? Should it set somebody off to the point where, you know, what if he gets killed, it's okay?

Defense counsel objected, stating that it was improper argument, and the circuit court ruled that "[t]hat's just closing argument." Defense counsel responded, "Okay. Thank you, ma'am." The prosecutor later continued,

> David Smith didn't do anything wrong. If he wants to wear a bra, wear a bra. Again, does that mean there's some reason that he should die? That he should be stabbed? Or that should cause some sort of psychosis or flip somebody out [to] the point where they would kill him? Absolutely not. And I please hope that y'all don't buy into that argument at all.

Defense counsel did not object to this statement.

We have stated that some leeway is given to counsel in closing argument and that counsel is free to argue every plausible inference that can be drawn from the testimony. *Newman v. State*, 353 Ark. 258, 106 S.W.3d 438 (2003). Closing arguments are not evidence. *Lee v. State*, 340 Ark. 504, 11 S.W.3d 553 (2000). Further, the circuit court is given broad discretion to control counsel in closing arguments, and we interfere only when there has been a manifest abuse of discretion. *Cox v. State*, 345 Ark. 391, 47 S.W.3d 244 (2001).

Here, the prosecutor merely made remarks on how the jury should view the facts presented in the case. These prosecutorial remarks were made during rebuttal to refute the defense theory that Smith provoked Davis by wearing a bra during a sexual act with Mills.

We conclude that the circuit court did not abuse its discretion in its ruling.

In compliance with Arkansas Supreme Court Rule 4–3(i) (2014), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Davis. From this review, no prejudicial error has been found.

Affirmed.

*Robert M. "Robby" Golden*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Ashley Argo Priest*, Ass't Att'y Gen., for appellee.