PETITIONERS APPEARING PRO SE:
**NANCY A. DAW**
**STEPHEN L. HOBACK**
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**ZACHARY D. PRICE**
**MATTHEW R. ELLIOTT**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

NANCY A. DAW, )
STEPHEN L. HOBACK, )
Co-Trustees of Sagacious Sentinel )
Sycamore Revocable Trust, )
    )
    Petitioners, )
    )
    v. )   Cause No. 18T-TA-00009
    )
HANCOCK COUNTY ASSESSOR, )
    )
    Respondent. )

FILED
Dec 05 2018, 4:13 pm
C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**December 5, 2018**

FISHER, Senior Judge

    Nancy A. Daw and Stephen L. Hoback, the Co-Trustees of the Sagacious Sentinel Sycamore Revocable Trust, have appealed the Indiana Board of Tax Review's final determination regarding the assessment of their real property for the 2016 tax year. While the Co-Trustees raise several issues on appeal, the Court consolidates them and restates them as:

I. Whether the Court has subject matter jurisdiction over the Co-Trustees' annexation and storm water claims; and

II. Whether the Indiana Board erred in upholding the assessment of the Co-Trustees' farmland.

Upon review, the Court finds in favor of the Co-Trustees with respect to Issue I and in favor of the Assessor with respect to Issue II.

## FACTS AND PROCEDURAL HISTORY

During the 2016 tax year, the Co-Trustees owned 54.05 acres of land located along a portion of West County Road 650 North in the Town of McCordsville, Hancock County, Indiana. (See Cert. Admin. R. at 99, 141.) They leased 37 acres of the land to a farmer who used no-till practices to cultivate and harvest field corn and soybeans. (See Cert. Admin. R. at 27-28, 60.) The remainder of the land was unsuitable for farming and thus remained in its natural state. (See, e.g., Cert. Admin. R. at 27-28.)

For the 2016 tax year, the Hancock County Assessor assigned the property an assessed value of $88,400. The Co-Trustees appealed the assessment, first to the Hancock County Property Tax Assessment Board of Appeals and then to the Indiana Board.

The Indiana Board held a hearing on the matter on August 18, 2017. During the hearing, the Co-Trustees claimed their property tax liability was incorrect because the ordinance that purported to annex their farmland to the Town of McCordsville (the "Town") was invalid. (See Cert. Admin. R. at 62-63, 181-82.) The Co-Trustees also claimed they did not owe nearly $3,000 in delinquent storm water charges and penalties that resulted from the Town's unauthorized imposition of a tax. (See Cert. Admin. R. at 25, 171-77.) The Co-Trustees further asserted that 1.05 acres of their land should have been assessed

2

as nontillable land because it was incapable of being farmed, and that their overall assessment was too high given their land's actual crop production capacity. (See Cert. Admin. R. at 158-70.)

In response, the Assessor argued that the Co-Trustees' annexation and storm water claims should be dismissed because the Indiana Board lacked the statutory authority to address them. (See Cert. Admin. R. at 148-49, 226-27.) The Assessor also claimed that her assessment should be upheld in its entirety because it comported with Indiana's assessment guidelines for agricultural property. (See Cert. Admin. R. at 200-19, 227-28.)

On January 17, 2018, the Indiana Board issued its final determination that declined to address the Co-Trustees' annexation and storm water claims due to a lack of statutory authority. (See Cert. Admin. R. at 118-20 ¶¶ 12-13, 19.) The Indiana Board also determined that while the Co-Trustees had shown that 1.05 acres of their land should have been assessed as nontillable land, they failed to show that their assessment should be changed in any other manner. (See Cert. Admin. R. at 119-20 ¶¶ 15-19.)

On March 2, 2018, the Co-Trustees filed a petition for review with the Tax Court. The Tax Court heard oral argument on September 14, 2018. Additional facts will be supplied when necessary.

### STANDARD OF REVIEW

The party seeking to overturn a final determination of the Indiana Board bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Thus, the Co-Trustees must demonstrate to the Court that the Indiana Board's final determination is arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence.  See IND. CODE § 33-26-6-6(e)(1)-(5) (2018).

## LAW AND ANALYSIS

### I.  Whether the Court has subject matter jurisdiction over the Co-Trustees' annexation and storm water claims

Subject matter jurisdiction, the power of a court to hear and determine a particular class of cases, is conferred upon a court by either the Indiana Constitution or statute. Grandville Co-op., Inc. v. O'Connor, 25 N.E.3d 833, 836 (Ind. Tax Ct. 2015). Consequently, "'[t]he only relevant inquiry in determining whether any court has [] subject matter jurisdiction is to ask whether the kind of claim which the plaintiff advances falls within the general scope of the authority conferred upon [the] court by the constitution or by statute.'"  Marion Cty. Auditor v. State, 33 N.E.3d 398, 400-01 (Ind. Tax Ct. 2015) (citation omitted).  The Tax Court, pursuant to its enabling legislation, has subject matter jurisdiction over all "original tax appeals."  IND. CODE §§ 33-26-3-1, -3 (2018).

A case is an original tax appeal if it arises under Indiana's tax laws and is an initial appeal of a final determination made by the Indiana Board.  I.C. § 33-26-3-1.  With respect to the first requirement, a case arises under Indiana's tax laws "if (1) 'an Indiana tax statute creates the right of action,' or (2) 'the case principally involves the collection of a tax or defenses to that collection.'"  Grandville Co-op, 25 N.E.3d at 836 (citation omitted). The second requirement, that a case appeal the Indiana Board's final determination, includes the exhaustion of administrative remedies requirement.  Id.

4

On appeal, the Co-Trustees contend that the Court has subject matter jurisdiction over their annexation and storm water claims because they are challenging the Indiana Board's final determination regarding the Town's unauthorized attempt to collect special benefit taxes.[1] (See Pet'rs' Br. at 13-14, 26-27, 29-30; Oral Arg. Tr. at 13-14.) The Assessor responds that the Co-Trustees' claims are improperly before the Court because they: 1) involve the collection of user fees, not taxes; 2) do not appeal an Indiana Board final determination; and 3) contravene the holding in City of Fort Wayne v. Southwest Allen County Fire Protection District, 82 N.E.3d 299 (Ind. Ct. App. 2017), trans. denied.[2] (See Resp't Br. at 8-12.)

**A. Whether the Co-Trustees' annexation and storm water claims challenge the collection of a tax or a user fee**

There is no dispute that the Town sought to annex the Co-Trustees' farmland pursuant to Ordinance No. 041001A and that it sought to impose storm water charges pursuant to the Storm Water Act, Indiana Code § 8-1.5-5-1 et seq. (Compare, e.g., Pet'rs' Br. at 5-8 with Resp't Br. at 5-6.) (See also Cert. Admin. R. at 62-63.) Thus, the first question the Court must answer is whether the Town's storm water charges are taxes, which may implicate the Court's jurisdiction, or user fees, which cannot.

---

[1] The Co-Trustees contend the Town's imposition and collection of special benefit taxes was impermissible because its annexation ordinance is void and it did not follow several portions of the Storm Water Act, including the adoption of an ordinance to establish a department of storm water management controlled by a three-member board of directors, not a five-member drainage board. (See, e.g., Pet'rs' Pet. Original Tax Appeal of a Final Determination of the Ind. Bd. of Tax Review ¶ 4; Pet'rs' Br. at 18-26; Pet'rs' Reply Br. at 10-13.)

[2] The Assessor has also claimed that the Court does not have subject matter jurisdiction over the Co-Trustees' claims because they were not created by an Indiana tax statute and, therefore, do not arise under the tax laws of Indiana. (See Resp't Br. at 7.) The Court need not address this claim because claims that "'principally involve[ the] collection of a tax or defenses to that collection[,]'" as alleged here, arise under Indiana's tax laws. See Grandville Co-op., Inc. v. O'Connor, 25 N.E.3d 833, 836 (Ind. Tax Ct. 2015) (citing State ex rel. Zoeller v. Aisin USA Mfg., Inc., 946 N.E.2d 1148, 1152 (Ind. 2011)).

The Storm Water Act allows certain municipalities to adopt ordinances that create special taxing districts comprised of all the territory within their corporate boundaries. See IND. CODE §§ 8-1.5-5-1, -4, -5(a)(2) (2018). The special taxing districts collect and dispose of storm water in a manner that protects the public health and welfare and may levy "special benefit taxes for purposes of storm water collection and disposal." See I.C. § 8-1.5-5-5(b). More specifically, the storm water facilities may be financed through "(1) proceeds of special taxing district bonds of the storm water district; (2) the assumption of liability incurred to construct the storm water system being acquired; (3) service rates; (4) revenue bonds; or (5) any other available funds." IND. CODE § 8-1.5-5-7(a) (2018). The assessment and collection of "user fees" from the owners of the district's property may be accomplished by a periodic billing system or by placing a charge on the semiannual property tax statements of the affected property owners. See I.C. § 8-1.5-5-7(b)-(c).

The Co-Trustees claim the actual language of the Storm Water Act indicates that the Town's storm water charges are taxes because it authorizes the creation of special taxing districts that may collect special benefit taxes to operate and maintain the storm water infrastructure. (See Pet'rs' Br. at 26-27.) The Assessor, however, construes the statutory language differently, claiming its express delineation of financing methods, particularly "service rates" and "proceeds of special taxing district bonds," indicates that the storm water charges are user fees, not taxes. (See Resp't Br. at 10 (stating that lumping the financing methods together would render the legislature's delineation of those methods meaningless).) The Assessor further maintains that the storm water charges are user fees because they are not derived from an exercise of the taxing power, based on "standard taxation considerations . . . such as taxable income or even property value[,]"

6

and "collected and paid along with a resident's other taxes[.]"  (See Resp't Br. at 10-11 (citing Nat'l Fed'n Indep. Bus. v. Sebelius, 567 U.S. 519, 569 (2012).)

When, as here, a statute is susceptible to more than one interpretation it is ambiguous and subject to judicial construction.  City of Carmel v. Steele, 865 N.E.2d 612, 618 (Ind. 2007).  In construing a statute, the Court's primary goal is to determine and implement the Legislature's intent.  See Bd. of Comm'rs of Cty. of Jasper v. Vincent, 988 N.E.2d 1280, 1282 (Ind. Tax Ct. 2013).  Generally, the best evidence of this intent is found in the actual language of the statute itself.  Washington Park Cemetery Ass'n v. Marion Cty. Assessor, 9 N.E.3d 271, 273 (Ind. Tax Ct. 2014).  Here, contrary to the Assessor's argument, the Storm Water Act's delineation of the financing methods does not indicate whether the storm water charges are user fees or taxes because special benefit taxes may take the form of either a uniform assessment based on a property's frontage, for example, or a pro-rata charge based on the benefits received by the property.  Martin v. Ben Davis Conservancy Dist., 153 N.E.2d 125, 133 (Ind. 1958).

In determining whether a charge is a tax or user fee, the Court should consider the character, operation, and effect of the charge rather than merely its label.  See, e.g., United States v. U.S. Shoe Corp., 523 U.S. 360, 367 (1998); Sanford v. Walther, 467 S.W.3d 139, 145 (Ark. 2015); State v. Medeiros, 973 P.2d 736, 741 (Haw. 1999); City of Huntington v. Bacon, 473 S.E.2d 743, 752 (W. Va. 1996).  Indiana's case law is instructive in this respect.  Indeed, the amounts collected to build, operate, and maintain a special taxing district's local public improvement (e.g., a sewer system) have been traditionally characterized as taxes in Indiana.  See generally, e.g., Book v. Bd. of Flood Control Comm'rs City of Indianapolis, 156 N.E.2d 87 (Ind. 1959); Dep't of Pub. Sanitation City of

7

Hammond v. Solan, 97 N.E.2d 495, 498-500 (Ind. 1951); Gilson v. Bd. of Comm'rs Rush Cty., 27 N.E. 235, 236 (Ind. 1891). This characterization is logical because an assessment or charge for a local public improvement is often recognized as an exercise of the government's power of taxation, not its power of eminent domain. See, e.g., Solan, 97 N.E.2d at 498-500; Gilson, 27 N.E. at 236; Slebodnik v. City of Indianapolis, 412 N.E.2d 854, 859 (Ind. Ct. App. 1980). As such, the courts have explained the legislature can determine what general class of property will be benefited by the exaction and the method to be followed in securing the funds. See Martin, 153 N.E.2d at 133; Solan, 97 N.E.2d at 500. The courts have further explained that while the proceeds of a special taxing district are not general property taxes, they nonetheless incorporate traditional standards of taxation by requiring uniform assessments based on recognized property tax standards, such as a property's value, area, or frontage; or 2) pro-rata charges based on the benefits received by the property. Martin, 153 N.E.2d at 133.

Furthermore, the Indiana Supreme Court has explained that "[a] tax is compulsory and not optional; it entitles the taxpayer to receive nothing in return, other than the rights of government which are enjoyed by all citizens." City of Gary v. Ind. Bell Tel. Co., 732 N.E.2d 149, 156 (Ind. 2000) (citations omitted). In contrast, "a user fee is optional and represents a specific charge for the use of publicly-owned or publicly-provided facilities or services." Id. (citations omitted). Similarly, the U.S. Supreme Court has explained that a fee is incident to a voluntary act and is not designed to confer benefits on the general public, but rather to benefit the particular person or property upon whom the fee is imposed. See Nat'l Cable Tel. Ass'n v. U.S., 415 U.S. 336, 340-41 (1974).

Based on the evidence before it, the Court finds that the Town's storm water

8

charges are taxes, not user fees. The certified administrative record indicates that the Town imposed storm water charges on nearly all the real property within its corporate boundaries. (See Cert. Admin. R. at 85 (excluding only public rights-of-way, wooded properties, and properties with utility towers).) It appears that the owners of that property receive bills for the charges either on a monthly basis with the billing statements for their other Town services or biannually with their property tax bills. (See Cert. Admin. R. at 83, 87.) While a property owner may request an adjustment to the charge, there is no indication that he can decline to use the service altogether or control the extent to which the service is used. (See Cert. Admin. R. at 87-88.) Accordingly, the Town's storm water charge is a compulsory charge.

To the extent the Town's storm water system is statutorily deemed to confer a special benefit on all property currently within, or subsequently added to, the special taxing district, the benefits conferred are not confined to the property itself or the owners of that property. See I.C. § 8-1.5-5-5(b). Indeed, improved water quality, avoiding penalties for improper discharge, and creating a mechanism to remove excess water from property and prevent flooding are goals that benefit all the Town's residents and do not necessarily enhance the value of property. (See Pet'rs' Br. at 22-23 (indicating that the Town is subject to specific EPA and IDEM regulation).)

Here, the Co-Trustees' annexation and storm water claims raise defenses to the collection of a tax. As a result, their claims satisfy the "arising under" requirement for purposes of the Court's subject matter jurisdiction.

## B. Whether the Co-Trustees have appealed an Indiana Board final determination

The Co-Trustees also claim they have satisfied the second requirement for the

Court's subject matter jurisdiction by appealing an Indiana Board final determination. (See, e.g., Pet'rs' Br. at 14.) The Assessor, on the other hand, maintains that the Co-Trustees have not appealed an Indiana Board final determination because the Indiana Board did not address their claims on the merits. (See Resp't Br. at 12; Oral Arg. Tr. at 34-36, 38.)

The Court has explained that an Indiana Board "'final determination is an order that determines the rights of, or imposes obligations on, the parties as a consummation of the administrative process.'" Grandville Co-op., 25 N.E.3d at 837 (emphasis omitted and citation omitted). In this case, even though the Indiana Board determined that it lacked the statutory authority to address the Co-Trustees' annexation and storm water claims, it ended the administrative process with respect to those claims and ultimately compelled the Co-Trustees to challenge that determination by filing an appeal with the Tax Court. Consequently, the Co-Trustees have satisfied the final determination requirement as well. Accordingly, this matter is the initial appeal from a final determination.

## C. Whether the Co-Trustees' annexation and storm water claims contravene the Fort Wayne case

In the Fort Wayne case, the Indiana Court of Appeals held that a trial court had subject matter jurisdiction over a declaratory judgment action involving the allocation of property tax revenues derived from several annexed territories because the trial court did not need to interpret or apply any substantive tax law in order to determine who should receive the property tax revenues. See City of Fort Wayne v. Sw. Allen Cty. Fire Prot. Dist., 82 N.E.3d 299, 303-05 (Ind. Ct. App. 2017), trans. denied. The Assessor contends that because the resolution of the Co-Trustees' annexation and storm water claims are

10

like those in the Fort Wayne case, i.e., they do not require the interpretation or application of substantive tax law, subject matter jurisdiction rests with a trial court as opposed to the Tax Court. (See Resp't Br. at 8-9.) The Assessor's argument is unpersuasive.

Contrary to the Assessor's argument, the issues in the Fort Wayne case are not similar to the issues presented here because the Fort Wayne case primarily concerned the allocation of property tax revenues and this case involves the imposition of a tax. As such, the Co-Trustees' annexation and storm water claims arise under Indiana's tax laws, and are thus properly before the Court, because they present defenses to the collection of a tax. See State ex rel. Zoeller v. Aisin USA Mfg., Inc., 946 N.E.2d 1148, 1153 (Ind. 2011) (providing that "'any case challenging the collection of a tax or assessment . . . whether the challenge is premised on constitutional, statutory, or other grounds" satisfies the arising under requirement). Indeed, the Indiana Supreme Court has explained that for purposes of satisfying the arising under requirement, a case need not challenge the collection of the tax directly, but may present "challenges to the earlier steps in the taxation or assessment process[.]" Id. Accordingly, the Court finds that the Co-Trustees' annexation and storm water claims do not contravene the Fort Wayne case.

## II. Whether the Indiana Board erred in upholding the assessment of the Co-Trustees' farmland

Indiana assesses all real property on the basis of its "true tax value." See 2011 REAL PROPERTY ASSESSMENT MANUAL ("Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2(c) (2016)) at 2. The "true tax value" of agricultural land does not mean its fair market value or the value of the property to the user, but rather the "market value-in-use of [the] property for its current use, as reflected by the utility received by the owner or by a similar user, from the property." See IND. CODE § 6-1.1-31-6(c), (e) (2016);

11

Manual at 2.

To assist assessing officials in determining the market value-in-use of agricultural land, the Department of Local Government Finance (the "DLGF") has promulgated a series of guidelines. See REAL PROPERTY ASSESSMENT GUIDELINES FOR 2011 ("Guidelines") (incorporated by reference at 50 I.A.C 2.4-1-2(c)), Bk. 1, Ch. 2 at 76-104. The Guidelines provide that the income approach[3] is the primary method used to determine the market value-in-use of agricultural land because it "utilizes the land's current market value, which is based on [its] productive capacity . . . regardless of [its] potential or highest and best use." See id. at 77. Accordingly, the DLGF annually calculates a statewide base rate for agricultural land consisting of the lowest five-years of a six-year rolling average of the capitalized net incomes of the land.[4] See id. at 77-78. (See also Cert. Admin. R. at 101-02 (the DLGF's "Certification of Agricultural Land Base Rate Value for Assessment Year 2016").) Assessing officials may then adjust the base rate to account for the land's specific use type and soil productivity. See, e.g., Guidelines, Bk. 1, Ch. 2 at 97-101.) (Compare also, e.g., Cert. Admin. R. at 99 with Cert. Admin. R. at 200-09.)

When an assessing official determines the market value-in-use of agricultural land pursuant to the Guidelines, the assessment is presumed to be correct. Manual at 3.

---

[3] The income approach "converts an estimate of income, or rent, [a] property is expected to produce into value through a mathematical process known as capitalization." 2011 REAL PROPERTY ASSESSMENT MANUAL ("Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2(c) (2016)) at 2.

[4] In developing the statewide base rate for agricultural land, the DLGF considers both cash rent (i.e., "the gross cash rent of an acre of farmland less the property taxes on the acre") and owner-occupied production income (i.e., "gross income received from the sale of crops less the variable . . . and fixed costs . . . of producing crops") because the net income of agricultural land is evenly divided between both sources of income in Indiana. (See Cert. Admin. R. at 101-02.)

Nevertheless, that presumption is rebuttable. Id. Consequently, a taxpayer may offer "[a]ny evidence relevant to the [market value-in-use (i.e., true tax value)] of the property as of the assessment date[.]" Id. Such evidence may include sales information regarding the subject property or comparable properties, appraisals relevant to the land's market value-in-use, or any other information compiled in accordance with generally accepted appraisal practices. See id.; Grabbe v. Carroll Cty. Assessor, 1 N.E.3d 226, 228 (Ind. Tax Ct. 2013).

On appeal, the Co-Trustees claim that the Indiana Board erred in concluding that their uncontroverted evidence failed to establish a prima facie case for an assessment reduction.[5] (See Pet'rs' Br. at 30-38.) During the Indiana Board hearing, the Co-Trustees claimed that the commercial development of nearby land had destroyed some of their drainage tiles and left their tillable land prone to flooding, which caused its annual yields of soybeans and corn to fall below the State's averages for six of the last eight years. (See Cert. Admin. R. at 158-61, 166-70.) The Co-Trustees maintained that their assessment should be reduced from $88,400 to approximately $61,860 to account for its decreased productivity. (See Cert. Admin. R. at 143, 160-61.) To support their position, the Co-Trustees offered a Production Chart for 2008 through 2016 that compared their annual yields of soybeans and corn to the State's average yields and explained:

> What we have is the soil in 2015 was down 28% from the State, 21% in 2014, 22% in 2013 and the drought year of 2012 it was +32% and in 2011 it was a dry year and we were above the average by 0.14 and in 2010 the property was below the State average in 19.6 and in 2009 which was also seems like an average year we were down by

---

[5] To support their claim, the Co-Trustees direct the Court to several articles regarding the soil productivity of agricultural land. (See, e.g., Pet'rs Br. at 32-35.) Because that evidence was not presented to the Indiana Board during the course of the administrative proceedings in this case, the Court may not consider it on appeal. See generally State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc., 420 N.E.2d 1324 (Ind. Ct. App. 1981); see also IND. CODE § 33-26-6-3 (2018).

2% from the average and in 2008 since we have records it was down .344%. If we use a mode[,] we believe approximately we are down 20.6% average per year. If we use an average[,] we are down 11.4%. [S]o our request is that because of the way that the property is set up that with the 8% increase in Crosby [soil type] we would like to have our property reduced down by a total of 11.4 plus the 8% which would be a total of 19.4% in evaluation for assessment which would reduce the assessment on . . . [the 13.8849 acres of Crosby soil type] to $24,111.96 and on [the] Brookstone [soil type] because we would like to use the module average of 20.7% we would like to add on to that 35.62% that it gets to make a total of 56.3% for an assessment per acre of $1,562.12 for a total assessment of $37,748.63 for the actual farmland.

(Cert. Admin. R. at 61, 159-61.) (See also Cert. Admin. R. at 99, 203-07.)

This evidence demonstrates that the Co-Trustees did not apply the income approach to determine the market value-in-use of their farmland; instead, they applied an alternative valuation methodology as allowed under the Guidelines. (See also, e.g., Oral Arg. Tr. at 7-11.) Nonetheless, nothing within the certified administrative record demonstrates that the Co-Trustees' evidence actually converts the decreased crop production capacity into a value or that their valuation method comports with generally accepted appraisal principles. Consequently, the Indiana Board did not err when it determined that the Co-Trustees failed to establish a prima facie case for an assessment reduction.

## CONCLUSION

For the above-stated reasons, the Court has subject matter jurisdiction over the Co-Trustees' annexation and storm water claims and AFFIRMS the Indiana Board's final determination with respect to Issue II. The Court, however, must REMAND this matter to the Indiana Board for additional proceedings for the following reasons. The Indiana Board is the finder of fact and consequently must weigh the evidence and judge the credibility

14

of witnesses. See, e.g., Stinson v. Trimas Fasteners, Inc., 923 N.E.2d 496, 498-99 (Ind. Tax Ct. 2010). Therefore, when litigants present the Indiana Board with claims that it lacks the authority to resolve, such as constitutional challenges, the Indiana Board must still make factual findings regarding those claims to facilitate the Court's subsequent review and resolution of the issues presented. See, e.g., Spencer Cty. Assessor v. AK Steel Corp., 61 N.E.3d 406, 413-14 (Ind. Tax Ct. 2016), review denied. In this case, the Indiana Board cannot resolve the issue whether the tax was properly imposed because it lacks the authority to determine the validity of the annexation and storm water ordinances; nonetheless, the Indiana Board must still make factual findings for the Court to use in resolving the matter. Accordingly, the Court now REMANDS the case with instructions for the Indiana Board to first consider whether the Town or any other entity should be joined as a party under Indiana Trial Rule 19. Then, the Indiana Board shall conduct another hearing on the Co-Trustees' annexation and storm water claims, allowing the parties to introduce additional evidence should they so desire, and enter specific findings of fact thereto. The certified administrative record of the supplemental proceedings shall be filed with the Court as expeditiously as possible.