FUTRELL *v.* STATE.

4-7388                                               181 S. W. 2d 680

Opinion delivered June 5, 1944.

*J. M. Futrell* and *Adrian Coleman,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

ROBINS, J.   The prosecuting attorney of the second judicial district of Arkansas filed in the circuit court a petition as provided for in Chapter 134 of Pope's Digest of the laws of Arkansas alleging that a beer parlor, dance hall and liquor store operated by appellants, J. F. Futrell and Tom Craft, was a public nuisance and asking that the operation of same be enjoined.

A temporary order enjoining the operation of the beer parlor, dance hall and liquor store was made by the circuit judge on presentation of the petition.  The case coming on for final hearing on February 12, 1942, appellants, Futrell and Craft, appeared and by their counsel stated that they "confess judgment and make no further defense to the application for a permanent injunction herein."  The court thereupon rendered judgment finding that "the Black River Camp, including the liquor store, beer parlor, dance hall and outbuildings" was a public nuisance and ordered that the temporary injunction previously issued be made permanent, and further ordered that all the buildings "be closed and not hereafter be used for any purpose whatever for a period of twelve months except by order of the court."

On June 11, 1942, appellant Futrell filed a petition requesting a modification of the judgment so as to permit the use of the building for "legitimate" purposes.  Apparently no action as to this petition was taken at the time.

On January 19, 1944, appellant Futrell filed a petition setting up that he was owner of the property involved herein and that on December 20, 1943, the sheriff of Clay county, acting under orders of the prosecuting attorney, placed padlocks on all the buildings situated on said premises.  The prayer of the petition was that the

sheriff be restrained from interfering with the use of said buildings and that he be directed to remove the padlocks therefrom. To this petition the prosecuting attorney filed a response setting up that the "court issued a permanent padlock order against the defendants and the premises mentioned in said petition, and that said padlock order is still in force and effect."

The case was tried upon a stipulation which *inter alia* recited that on June 1, 1943, Futrell had leased the premises to J. J. Steel for one year; that Steel had procured proper licenses to sell wine and beer on the premises and was, on December 20, 1943, operating a dance hall and selling wine and beer with certain fixtures of his own, and that on said date the sheriff removed these fixtures, padlocked all doors and placed on the buildings certified copies of the order of court dated February 12, 1942.

The court entered an order denying the petition; from which order this appeal is prosecuted.

The statutory authority to close up and prohibit the use for any purpose of buildings in which there is maintained a nuisance such as is here involved is contained in §§ 10913 and 10921 of Pope's Digest of the laws of Arkansas, which empower the court to close a building pending the hearing of the petition for abatement, and §§ 10916 and 10924 which provide that, where an order of abatement has been violated, the court may, in addition to punishing the offender by fine, or by fine and imprisonment, for violation of the order, order the padlocking of the premises involved for a period of one year. Under the statutes referred to the court may enjoin perpetually the maintaining of the nuisance in a building, but the court has no power under the statute to order the closing of the building for any length of time, except during the period from the granting of the temporary order until the final hearing of the petition for abatement, and except by way of additional punishment for violation of the court's order enjoining the nuisance. In the case at bar, though there may have been a violation

of the valid portion of the court's order (that part forbidding the operation of the dance hall and the sale of beer and wine), there has been no proceeding in court to inquire into or to punish such violation.

The court, in directing that the buildings on the premises be closed and not used for any purpose for a period of twelve months, exceeded the powers granted to it under the statute, because, at the time this order was made, there had been no contempt proceedings. Furthermore, on December 20, 1943, the last date on which the sheriff padlocked the doors, the twelve months' period, during which the buildings were ordered closed for all purposes, had expired, so that, viewed from any standpoint, this action on the part of the sheriff was unauthorized.

It is urged by appellant that the order forbidding the operation of the dance hall and the sale of liquor and beer was ineffective as to the tenant Steel, because he was not a party to the original proceeding. This contention cannot be sustained. The court found that the operation of the dance hall, beer parlor and liquor store on the described premises was a nuisance and enjoined same. This was a perpetual order and, unless modified by the court, continued in force, regardless of any change in the ownership or possession of the property. "Where the decree is not only *in personam* against defendant in the injunction suit, but also operates *in rem* against specific property, or against a given illegal use of such property, the decree is a limitation upon the use of the property of which all subsequent owners, lessees, or occupants must take notice." 46 C. J. 800. "An injunction restraining the defendant and all other persons from keeping or maintaining a nuisance on certain premises is considered one *in rem,* which is binding upon subsequent owners, tenants, or occupants, of which they must take notice at their peril . . ." 39 Am. Jur. 448.

The order of the lower court is accordingly reversed and the cause is remanded with directions to the lower court to enter an order, denying the prayer of appellant

to modify that part of the original order under which the operation of the dance hall, beer parlor and liquor store is enjoined, but modifying the original order so as to eliminate therefrom all parts thereof under which the use for any purpose of the buildings on the premises is forbidden, and the lower court should direct the sheriff to remove from the buildings the padlocks placed thereon by him.

McFADDIN and KNOX, JJ., concur.

McFADDIN, J., concurring. I concur in the result reached in this case; but there is one paragraph in the majority opinion that gives me some concern; and I desire to discuss that paragraph. It is the one reading:

"It is urged by appellant that the order forbidding the operation of the dance hall and the sale of liquor and beer was ineffective as to the tenant Steel, because he was not a party to the original proceeding. This contention cannot be sustained. The court found that the operation of the dance hall, beer parlor and liquor store on the described premises was a nuisance and enjoined same. This was a perpetual order and, unless modified by the court, continued in force, regardless of any change in the ownership or possession of the property. 'Where the decree is not only *in personam* against defendant in the injunction suit, but also operates *in rem* against specific property, or against a given illegal use of such property, the decree is a limitation upon the use of the property of which all subsequent owners, lessees, or occupants must take notice.' 46 C. J. 800. 'An injunction restraining the defendant and all other persons from keeping or maintaining a nuisance on certain premises is considered one *in rem,* which is binding upon subsequent owners, tenants, or occupants, of which they must take notice at their peril . . .' 39 Am. Jur. 448."

This paragraph might lead someone to conclude that this court was holding that the injunction in public nuisance cases operates *in rem,* and that any subsequent purchaser of the premises is bound by the previous injunction proceedings regardless of the question of actual

knowledge. If that meaning should be inferred from the above paragraph then I point out that such a holding (1) is *dicta* in this case; and (2) is unsound law.

(1)   Such a holding is *dicta* in this case, because J. J. Steel is not a party of record in this case, and therefore his rights cannot be adjudicated here. In the original injunction proceedings in 1942, J. J. Futrell and Tom Craft were the only defendants. In the 1944 proceedings, Futrell alone was the party defendant. Futrell is the only party appellant although the name of Craft appears on the brief. In the order of January 19, 1944, Futrell alone appeared; and in the motion for new trial Futrell was the only movant. So any question as to whether Steel is a subsequent purchaser from Craft, with knowledge or notice of the injunction, cannot be adjudicated in this case since Steel is not a party to the record. Therefore any language in the opinion, about the injunction being *in rem* and binding on subsequent owners and holders, is purely *dicta*.

(2)   It would be unsound law to hold that an injunction, under chapter 134 of Pope's Digest, ran with the land and that "all subsequent owners, lessees, or occupants must take notice." I say such a holding would be unsound law, because it would change our recordation laws as contained in §§ 1846-7 of Pope's Digest. These sections say, *inter alia,* that any instrument affecting the title to property shall be constructive notice *only from the time that it is filed for record* in the office of the recorder; and that no instrument of writing affecting title should be good or valid *against a subsequent purchaser of such real estate* for a valuable consideration, *without actual notice thereof, unless the instrument has* been acknowledged and *filed* as required by law. I cannot believe that the Legislature, in enacting the laws concerning public. nuisances, (as contained in Chapter 134 of Pope's Digest), intended to change or modify our recordation laws which have been in effect since the Act of December 19, 1846. Yet if an injunction, under the public nuisance laws, runs with the land, then a person purchasing real estate would have to examine all of the

Circuit Court records and Chancery Court records of the County from the enactment of the first of the public nuisance laws, (in 1915), up to the time of the purchase to see if any of the property about to be purchased, had ever been involved in some public nuisance proceeding. Abstractors would have to set up new methods for examining Court records to cover the question of public nuisance injunctions. The public nuisance laws, contained in Chapter 134 of Pope's Digest, embrace three acts of the Legislature, being Act 109 of 1915, Act 118 of 1937, and Act 331 of 1937. There is no section, in any of these acts, that attempts to repeal the recordation laws; and any construction of these acts, which would let the injunction order be *in rem* and binding on subsequent owners, would give an effect to these acts that is not expressed in the acts, and would do violence to our recordation statutes. Such a construction should be avoided, and is not necessary to the conclusion and result reached by the majority in this case.

Therefore, this concurring opinion is to direct attention against any possible misunderstanding of the extent and effect of the majority opinion.