Donald FRANKLIN. et ux *v.* STATE of
Arkansas et al

79-191                                          590 S.W. 2d 28

Opinion delivered December 3, 1979
(In Banc)

*Gibson & Gibson, P.A.,* by: *R. Bynum Gibson, Jr.,* for appellants.

*Steve Clark,* Atty. Gen., by: *Catherine Anderson,* Asst. Atty. Gen., for appellees.

JOHN I. PURTLE, Justice. The prosecuting attorney of the tenth judicial district filed a petition for abatement of a nuisance, pursuant to Act 118 of 1937 (Ark. Stat. Ann. §§ 34-111 — 119 [Repl. 1962]). The alleged nuisance was a dance hall owned and operated by appellants. On April 30, 1979, the court ordered the dance hall temporarily padlocked without a hearing and without notice to appellants. The order met the requirements of Ark. Stat. Ann. § 34-115 (Repl. 1962). A hearing was held on May 5, 1979, and the order padlocking the property was continued in force pending a final hearing. The trial court upheld the constitutionality of Act 118 of 1937.

The facts are undisputed in this case. Without a hearing or notice to appellants, the prosecuting attorney procured the order from the circuit court padlocking appellants' property on the ground that it was a public nuisance. The only notice received by appellants was the temporary order padlocking their premises and it was nailed to the door of their business in their absence. Appellants applied to this Court for a temporary writ of prohibition which we denied without prejudice, pending the hearing to be held the same day on the order padlocking the premises. At the hearing on May 5, 1979, the trial court determined Act 118 of 1937 was constitutional and extended the order padlocking the property until the permanent hearing on June 7, 1979. Appellants returned to this Court for a temporary writ of prohibition and we granted temporary relief and ordered the matter briefed pursuant to our Rule 16.

Ark. Stat. Ann. § 34-111 (Repl. 1962) states:

"Dance hall" defined. — Term "dance hall" as used in this act (§§ 34-111 — 34-119) is hereby construed to mean any building, premise, pavilion, or place of business wherein dancing is permitted or conducted, or engaged in, by the public in general, either for profit or not.

Ark. Stat. Ann. § 34-112 (Repl. 1962) states:

Dance hall as nuisance. — The operation of a dance hall in which, or around which, public disturbances, the unlawful drinking of intoxicating liquors, quarrels, affrays, or general breaches of the peace are frequent, is hereby declared to be a public nuisance, and detrimental to the public morals and may be abated under the provision of this act (§§ 34-111 — 34-119) as hereinafter set out.

Ark. Stat. Ann. § 34-113 (Repl. 1962) grants the prosecuting attorney, among others, authority to proceed under this Act, either in chancery or circuit courts. Ark. Stat. Ann. § 34-115 (Repl. 1962) provides a temporary injunction may be granted without notice or hearing as was done in the present case.

This same Act was considered in the case of *Futrell* v. *State,* 207 Ark. 452, 181 S.W. 2d 680 (1944). In *Futrell* the trial court ordered all the buildings ''be closed and not hereafter be used for any purpose whatever for a period of twelve months except by order of the court.'' We held the order exceeded the powers granted to the court under the statute; because at the time the order was made there had been no contempt proceedings. Prior cases had held such premises could be completely closed for all purposes only where there was a violation of a prior injunction prohibiting unlawful conduct on the premises. We also considered this Act in the case of *Lawson* v. *State,* 226 Ark. 170, 288 S.W. 2d 585 (1956). We modified the order of the trial court which had padlocked a dance hall for a period of one year preventing its operation for any purpose. We reduced the order to one enjoining the use of the property or permitting it to be used for illegal purposes for a period of one year. The order in *Lawson* was the same as that in *Futrell* in that it provided all persons be enjoined ''from operating the said place for any purpose whatsoever for a period of one year from this date.'' We held the order was too broad as the statute was intended to abate the nuisance rather than close the property for all purposes. Citizens have the right to use their property in a

legal manner and courts should not interfere with such rights unless compelled to do so.

We do not find we have previously been asked to view Act 118 of 1937 as to its constitutionality. The case of *Vandergriff* v. *State,* 239 Ark. 1119, 396 S.W. 2d 818 (1965) concerned Act 109 of 1915. The statutes are very similar but they are different. Additionally, the holding of constitutionality in *Vandergriff* was dicta. In the present case the constitutionality of the Act has been squarely presented to us from the beginning. It was raised at the first opportunity and has continued to be a defense in this case. Therefore, we will consider the question of its constitutionality.

Article 2, section 21 of the Constitution of the State of Arkansas states:

> No person shall be taken or imprisoned, or disseized of his estate, freehold, liberties or privileges; or outlawed or in any manner destroyed or deprived of his life, liberty or property, except by the judgment of his peers or the law of the land; nor shall any person, under any circumstances, be exiled from the State.

The Fifth Amendment to the Constitution of the United States requires that no person be deprived of life, liberty or property, without due process of law. Amendment 14, section 1 to the Constitution of the United States reads in part as follows:

> . . . nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

In *Fuentes* v. *Shevin,* 407 U.S. 67 (1972), the United States Supreme Court considered a somewhat similar case. The Florida statute under consideration provided for taking of property in a summary manner without notice or hearing. In *Fuentes* the Court stated:

> The constitutional right to be heard is a basic aspect of

the duty of government to follow a fair process of decision making when it acts to deprive a person of his possession. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment — to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party. So viewed, the prohibition against the deprivation of property without due process of law reflects the high value, embedded in our consitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference.

The Court further stated the requirement of notice and an opportunity to be heard raised no impenetrable barrier to the taking of a person's property. Such safeguards are necessary to avoid unfair or mistaken deprivation of property interest. In *Goss* v. *Lopez,* 419 U.S. 565 (1975), the United States Supreme Court spoke of constitutional safeguards in the following language:

. . . there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.

In the more recent case of *Barry* v. *Barchi,* 47 U.S.L.W. 4812 (S. Ct. June 25, 1979), the Court dealt with a temporary injunction very similar to the one in question. In *Barry* the state had temporarily taken a horse trainer's license, without notice or hearing, because one of his horses, which had finished in the money, was determined to have been drugged. The New York rule, like our statute, provided for temporary suspension of the license without notice or hearing. The United States Supreme Court held that the trainer was entitled to a meaningful hearing before his license could be taken from him. In *Gerstein* v. *Pugh,* 420 U.S. 103 (1975), the Supreme Court struck down a Florida statute which allowed a person to be placed in jail without an opportunity

for a probable cause determination. In *Pugh* the Court stated:

> Although a conscientious decision that the evidence warrants prosecution affords a measure of protection against unfounded detention, we do not think prosecutorial judgment standing alone meets the requirements of the Fourth Amendment.

Fundamental requirements of due process require the opportunity to be heard at a meaningful time and a meaningful place before a person may be deprived of life, liberty or property. A temporary injunction, under the circumstances of this case, ordinarily turns into a permanent one. Even a delayed hearing is to a great extent an exercise in futility because even if the rights be restored the deprivation of rights during the temporary injunction cannot be regained. The statute in question here specifically allows the state to proceed without a bond. Therefore, damages incurred as a result of a wrongful temporary injunction would seldom, if ever, be recovered. The record in this case clearly shows there was no threat to life, liberty, or property, at the time the injunction was issued. In fact, the record does not disclose that there was anything more than drinking outside the building going on at this place. There were allegations that fights and other disturbances had occurred but all of the witnesses who testified denied personal knowledge of such occurrences. Merely operating a dance hall is not of itself illegal. Unlawful activities are often carried on outside other places of business.

We hold the statute authorizing a temporary or permanent injunction without notice and an opportunity to be heard fails to meet the fundamental requirements of the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and article 2, section 21 of the Constitution of the State of Arkansas. The statute is so broad as to allow the closing of a place of business merely upon the verified allegation of a prosecuting attorney without any proof whatsoever in support thereof. The opportunity for abuse of power in such cases is too great to be allowed to continue. Even an honest mistaken belief that a nuisance

was being carried on would deprive the person of his property without due process of law. Therefore, we hold that Act 118 of 1937 is unconstitutional. The case is reversed and remanded with directions for the trial court to dissolve the injunction and cause the property to be returned to the appellants.

Reversed and remanded.

HARRIS, C.J., not participating.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent because I do not think the rigid due process requirements insisted upon by the majority are appropriate in this case or mandated by the due process clauses of the Constitution of Arkansas and the Fifth and Fourteenth Amendments to the United States Constitution. In none of the cases cited by the majority is there the combination of factors presented here. The governmental interest in the prompt and effective abatement of public nuisances is one important factor. In addition, the proceedings are conducted in accordance with procedures in chancery courts, and all courts before which such proceedings are brought have all the jurisdiction and powers of equity courts. Ark. Stat. Ann. § 34-116 (Repl. 1962). Chancery court procedure with reference to injunctions is governed by Rule 65, Rules of Civil Procedure. Under Rule 65 (b), upon application of the party against whom a preliminary injunction or temporary restraining order has been issued without notice, the court *shall* as expeditiously as possible, hold a hearing to determine whether it should be dissolved.

Due process requirements of notice and hearing are not absolute. A great deal of flexibility exists in the requirements of due process of law, which calls only for such procedural protections as the particular situation demands. *Morrissey* v. *Brewer,* 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). Where there is an important government interest involved, the requirements are much less strict than when only private interests are involved. The availability of a prompt hearing at

the instance of the party against whom the governmental action is directed is an important factor in determining whether process is due. In my opinion, the fundamental right to due process is fully recognized and protected by this statute.

In *Fuentes* v. *Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972), relied upon by the majority, the United States Supreme Court held the statutory procedures violative of due process only because debtors were deprived of their property without provision for hearings at *a meaningful time,* but the court fully recognized that, in limited circumstances, immediate seizure of a property interest, without an opportunity for a prior hearing, is constitutionally permissible. Those circumstances are those in which:

> 1. The seizure has been directly necessary to secure an important governmental or general public interest;

> 2. There has been a special need for very prompt action; and

> 3. The state has kept strict control over its monopoly of legitimate force; the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in this instance.

See *Calero-Toledo* v. *Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S. Ct. 2080, 40 L. Ed. 2d 452 (1974), where specific instances were mentioned, viz:

> Thus, for example, due process is not denied when postponement of notice and hearing is necessary to protect the public from contaminated food, *North American Storage Co.* v. *Chicago,* 211 U.S. 306 (1908); from a bank failure, *Coffin Bros. & Co.* v. *Bennett,* 277 U.S. 29 (1928); from misbranded drugs, *Ewing* v. *Mytinger & Casselberry, Inc.,* 339 U.S. 594 (1950); to aid the collection of taxes, *Phillips* v. *Commissioner,* 283 U.S. 589 (1931); or to aid the war effort, *United States* v. *Pfitsch,* 256 U.S. 547 (1921).

Even if the holding in *Vandergriff* v. *State,* 239 Ark. 1119, 396 S.W. 2d 818 is now taken to be dictum, I submit that it is sound and correct and that it should be followed, not overruled.

It may well be that the statute was unconstitutionally applied in this case, but, for some reason, appellants narrowed their attack to the facial constitutionality of the statute. It seems to me that the majority, however, is taking the wholly unwarranted step of holding the statute unconstitutional on its face. As a result, it seems that, until the General Assembly can act, there will be no means of abating a public nuisance of the nature covered by the existing statute, however great that nuisance may be. See *The Rendezvous Club* v. *State,* 247 Ark. 670, 447 S.W. 2d 842.