Cite as 2020 Ark. 12

# SUPREME COURT OF ARKANSAS

No. CV-18-1034

| | |
|---|---|
| CITY OF LITTLE ROCK<br>APPELLANT<br>V.<br><br>ALEXANDER APARTMENTS,<br>LLC; ARKANSAS COMMUNITY<br>ORGANIZATIONS; MELODY<br>BRANCH; CAROLYN FORD;<br>INGRAM MURPHY; AND<br>LINDA WHEELER<br>APPELLEES | Opinion Delivered: January 16, 2020<br><br>APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT<br>[NO. 60CV-15-6339]<br><br>HONORABLE ALICE S. GRAY,<br>JUDGE<br><br>AFFIRMED IN PART; REVERSED<br>AND REMANDED IN PART. |

**JOHN DAN KEMP, Chief Justice**

The City of Little Rock (the "City") appeals the Pulaski County Circuit Court's order awarding damages under the Arkansas Civil Rights Act (ACRA) to appellees Alexander Apartments, LLC ("Alexander Apartments"), and Melody Branch, Carolyn Ford, Ingram Murphy, and Linda Wheeler (collectively the "tenants") after determining that the City violated those appellees' due-process rights under the Arkansas Constitution.[1] For reversal, the City argues that the circuit court erred by finding that (1) it violated the due-process rights of Alexander Apartments and the tenants, (2) Vol. 1, § 108.1 of the Arkansas Fire Prevention Code and the City's ordinance adopting it are unconstitutional, and (3) Alexander Apartments and the tenants were entitled to their respective awards of damages. We affirm in part, and reverse and remand in part.

---

[1]Separate appellee Arkansas Community Organizations ("ACO"), a not-for-profit organization, was permitted to intervene in the case to assert due-process claims against the City but did not seek damages.

I. *Facts and Procedural History*

On March 14, 2014, Alexander Apartments purchased an apartment complex (the "complex") located at 6310 Colonel Glenn Road in Little Rock. The complex consisted of seventeen buildings with a total of 141 apartment units. At that time, less than one-third of the units were occupied, and all were in disrepair. Within two weeks of the purchase, City code-enforcement officers conducted inspections of each unit, and the City prepared an itemized list of life-safety and non-life-safety concerns for each unit. Alexander Apartments conferred with the City on a plan to make repairs but was unable to complete the repairs within the time frame imposed by the City. In June 2014, the City served Alexander Apartments with a citation to appear before the Environmental Division of the Little Rock District Court. Alexander Apartments then appeared in district court every thirty to forty-five days and gave status reports on its progress in remedying numerous existing building-code violations. Between March 2014 and December 2015, code-enforcement officers found ninety-nine units to be cleared of life-safety and non-life-safety violations and approved them for occupancy. A unit was cleared for occupancy by officers as late as December 2015.

On December 17, 2015, the district court conducted a status hearing, and the City raised allegations of new violations and moved to close the complex until the violations were remedied. At a December 21, 2015 hearing, the City withdrew its motion to close the complex. Little Rock Fire Chief Gregory Summers then handed Jason Bolden, the managing member of Alexander Apartments, a letter stating that

> [o]n December 16, 2015 members of my staff assisted by Building Code inspectors of the Housing and Neighborhood Programs Department conducted fire and life

safety code inspection of the above mention [sic] property in accordance with the 2012 International Property Maintenance Code and the 2012 Arkansas Fire Prevention Code. Numerous violations were discovered that cause a dire concern for the life safety of the occupants. Exposed wiring, evidence of raw sewage, absent and non-working smoke alarms, appearance of mold, carcass of a cat, water settling on the roof, plumbing and mechanical issues were all discovered during this inspection. Life safety is of utmost importance as it provides strategies to protect our citizenry and minimize the effects of fire and related hazards. Your facility is far from accomplishing the most basic safeguards against fire or other hazards and therefore as the Fire Chief I'm ordering this complex to cease operations until such time as all buildings are in compliance with the 2012 versions of the Arkansas Building and Fire Codes. All tenants have until Monday December 28, 2015 at 5:00 pm to vacate the property. You will be provided with a detail [sic] list of violations that must be complied with before re-occupying any buildings on the property. This order includes all buildings and operations conducted on the property. By close of business Monday December 28, 2015 all utilities will be disconnected.

Alexander Apartments objected to the orders given in the letter, and the district court ruled that it had no jurisdiction over the matter. That same day, a copy of the letter was wedged in the door of each apartment at the complex, and the City placed a notice on each door, ordering the occupants to vacate their apartments by December 28, 2015. The letter and notice did not offer any process by which the tenants could challenge the City's action.

On December 21, 2015, Alexander Apartments filed a complaint against the City and moved for a temporary restraining order (TRO), alleging that the City violated its due-process rights under both the Arkansas and the United States Constitutions by taking its property without notice and without providing an opportunity to be heard. Alexander Apartments also alleged that, as of that date, it had no notice of the issues that, according to the City and the fire chief, warranted closing the complex. Thus, it sought written notice of the alleged violations. The next day, the tenants and ACO filed a motion to intervene as a matter of right in the lawsuit. They also filed a third-party complaint against the City and

3

Alexander Apartments and moved for a TRO. Also on December 22, the City provided Alexander Apartments with a written list of violations.

On December 23, the circuit court granted the TRO requests, prohibiting the City from terminating utilities or requiring that Alexander Apartments and the tenants relocate. The circuit court found that Alexander Apartments and the tenants had shown good cause to believe that the City ordered the closure of the complex without proper procedural protections under the Arkansas and the United States Constitutions and that a forced closure would cause them immediate and irreparable harm. On December 29, the circuit court held a hearing and ruled from the bench the following day that the TRO would remain in effect until the final trial. On January 15, 2016, the circuit court entered an order continuing the TRO until a final hearing in the matter.[2] The circuit court also granted the tenants' motion to intervene, but it reserved ruling on ACO's intervention.

On January 20, ACO and the tenants filed an amended third-party complaint seeking declaratory and injunctive relief. They alleged that the City had violated the tenants' due-process rights under the Arkansas Constitution and asserted multiple claims against Alexander Apartments. The tenants also sought actual and punitive damages.

On August 23, 2016, ACO and the tenants moved for summary judgment on their due-process claims against the City. They sought declarations that, as a matter of law, the City had violated the tenants' due-process rights by taking their property without adequate

---

[2]That same day, the City removed the case to federal court. On January 20, 2016, the United States District Court entered an order declining to exercise supplemental jurisdiction over the state-law claims and remanded those claims to state court. It held in abeyance proceedings on the federal claims pending resolution of the state-law claims.

notice or an opportunity to be heard and that Arkansas Residential Fire Code § 108 and Little Rock ordinance § 8-579 were unconstitutional. They also sought a permanent injunction prohibiting the City from dispossessing the tenants of their rental units and utility services without providing adequate notice and an opportunity to be heard.[3]

On February 14, 2017, the circuit court held a hearing on that motion for summary judgment. On July 10, the circuit court found that (1) the City violated the tenants' state due-process rights by failing to provide predeprivation notice of a procedure to challenge the City's actions and by failing to provide the tenants with an opportunity for a postdeprivation hearing, and (2) the Arkansas Fire Prevention Code ("Fire Code") violates the tenants' state due-process rights because it does not establish any mechanism for review of decisions made by the City's fire officials.[4] The circuit court also enjoined the City from depriving tenants of their property rights without adequate notice and an opportunity for a pre- or postdeprivation hearing. It reserved the issue of damages for trial.

On September 19, 2017, Alexander Apartments amended its complaint to seek a permanent injunction prohibiting the City from closing the complex without notice and an opportunity for review of the fire official's actions and to seek damages under the ACRA for violations of its due-process rights. Alexander Apartments then moved for summary judgment, claiming entitlement to judgment as a matter of law on its due-process claim

---

[3]The circuit court subsequently permitted ACO to intervene only in its cause of action against the City.

[4]The circuit court later entered an order clarifying that it did not find the Arkansas Fire Prevention Code, Vol. 1, § 108.1 (2012 ed.) unconstitutional because it provides that a county, municipality, or any other political subdivision may establish a local board of adjustments and appeals for the purpose of reviewing orders given by local fire officials.

because the City provided no opportunity to be heard on the order closing the complex. The City cross-moved for summary judgment, arguing that there was no due-process violation because Alexander Apartments filed suit before the City could provide a postdeprivation hearing and that it had an opportunity to be heard in the circuit court less than forty-eight hours after receiving the fire chief's order, which resulted in the TRO. Following a hearing on the cross-motions for summary judgment, the circuit court entered an order on November 29, 2017, granting Alexander Apartments' motion and denying the City's. It found that the City violated Alexander Apartments' due-process rights under the Arkansas Constitution and that it was entitled to damages under the ACRA.

On August 29, 2018, the circuit court entered an order awarding Alexander Apartments $432,744.33 for lost revenue and expenses it incurred to mitigate its damages and awarding compensatory damages to the tenants in the amounts of $25,000 to Melody Branch, $10,000 to Ingram Murphy, and $8,500 each to Linda Wheeler and Carolyn Ford.[5]

The City timely appealed the circuit court's order.

### III. *Points on Appeal*

### A. Due Process

For its first point on appeal, the City argues that the circuit court erred in granting summary judgment based on its findings of due-process violations. The City argues that it did not violate Alexander Apartments' or the tenants' due-process rights under the Arkansas Constitution.

---

[5]The tenants' claims against Alexander Apartments were previously dismissed with prejudice by agreement of the parties.

Ordinarily, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *See Hobbs v. Jones*, 2012 Ark. 293, at 7–8, 412 S.W.3d 844, 850. But when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id*. at 8, 412 S.W.3d at 850. When the parties file cross-motions for summary judgment, as in this case, we determine on review whether the appellee was entitled to judgment as a matter of law. *See Sullins v. Cent. Ark. Water*, 2015 Ark. 29, at 3–4, 454 S.W.3d 727, 730. As to issues of law presented, our review is de novo. *See Hobbs*, 2012 Ark. 293, at 8, 412 S.W.3d at 850.

The Arkansas Constitution provides that "[n]o person shall be deprived . . . of his life, liberty, or property" without due process of law. Ark. Const. art. 2, § 21. Due process requires at a minimum that a person be given notice and a reasonable opportunity for a hearing before he or she is deprived of property by state action. *See State of Wash. v. Thompson*, 339 Ark. 417, 425, 6 S.W.3d 82, 87 (1999). The concept of due process requires neither an inflexible procedure universally applicable to every situation nor a technical concept with a fixed content unrelated to time, place, and circumstance. *Id*., 6 S.W.3d at 87. Instead, what process must be afforded is determined by context, dependent upon the nature of the matter or interest involved. *Id*. at 426, 6 S.W.3d at 87. A valid due-process claim consists of four elements: action under color of state law; a right, privilege, or immunity secured by the constitution such as property; a loss of property amounting to a deprivation; and an absence of due process. *See Sanford v. Walther*, 2015 Ark. 285, at 9, 467 S.W.3d 139, 146

## 1. *Alexander Apartments*

In the present case, the circuit court granted summary judgment to Alexander Apartments on its claim that the City violated its right to due process under the Arkansas Constitution. In its order, the circuit court noted section 110.2 of volume I of the Fire Code, which provides that "[t]he fire code official . . . shall be authorized to order the immediate evacuation of any occupied building deemed unsafe when such building has hazardous conditions that present imminent danger to building occupants." It found that the City did not immediately evacuate any occupant of any building on either December 16 or December 21, but informed tenants on December 21 that they had another week to vacate the complex. It found that the Fire Code authorizes a "fire code official" (here the fire chief) to "enforce the provisions of the code," and it authorizes the City to establish a board of appeals to hear appeals of orders, decisions, or determinations made by the fire-code official. It found, however, that the City did not establish any board or other entity to allow a property owner or tenant to challenge such actions by the fire chief. The circuit court noted that "[t]o date, almost two years later, the City has not provided any process to Alexander Apartments regarding the deprivation of its property interest."

It further found that there was no genuine issue of material fact that the City (1) deprived Alexander Apartments of a property interest by ordering it to cease its operations and by ordering its tenants to vacate the premises; (2) did not provide any mechanism, either before or after Fire Chief Summers issued his order, for Alexander Apartments to challenge the closure; and (3) was acting under color of the Fire Code, as incorporated by reference in § 8-2 of the Little Rock Municipal Code, in closing the complex. Thus, it concluded

that Alexander Apartments was entitled to judgment as a matter of law that the City violated its right to due process under the Arkansas Constitution.

We agree with the circuit court's finding that Alexander Apartments was entitled to judgment as a matter of law that the City violated its due-process rights under the Arkansas Constitution. It was undisputed that it had a property interest in the operation of the complex that it owned. The circuit court correctly found, as a matter of law, that Alexander Apartments was deprived of that property interest by the fire chief's order that it cease its operations there and that its tenants vacate the property; that the fire chief was acting under color of the Fire Code in issuing that order; and that the City did not provide any mechanism—either before or after the fire chief issued his order—for Alexander Apartments to challenge the closure. This court has recognized that this constitutes a valid due-process claim. *See Sanford*, 2015 Ark. 285, at 9, 467 S.W.3d at 146; *Franklin v. State*, 267 Ark. 311, 316, 590 S.W.2d 28, 31 (1979).

We further agree with the circuit court that the filing of this action did not relieve the City of its obligation to provide due process to Alexander Apartments. As the circuit court correctly concluded, "a post-deprivation hearing before a neutral decision maker may have obviated the need for this action altogether."[6] We also reject the City's argument that

---

[6]We also are unpersuaded by the City's reliance on the federal cases holding that, when a postdeprivation hearing of some sort is warranted, a common-law tort remedy for wrongful deprivation satisfies due process. *See Zinermon v. Burch*, 494 U.S. 113, 129–32, 137–39 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 540–41 (1981). Although we may look to federal § 1983 decisions when analyzing ACRA claims, *see* Ark. Code Ann. § 16-123-105(c) (Repl. 2006), the rule providing for a postdeprivation common-law tort remedy is limited to "random and unauthorized" behavior by state employees. The City has not alleged that the fire chief's order was random

9

there was no due-process violation because it was exercising its police power during an emergency situation, which rendered any predeprivation hearing impractical if not impossible. Although the City claimed that an emergency observed on December 16, 2015, necessitated the immediate closure of the complex, the order did not mandate closure until twelve days later. The urgent situation described by the City was belied by its own delay. Even assuming that an emergency justified a delayed hearing, *see Fuentes v. Shevin*, 407 U.S. 67, 90 (1972), the City offered no postdeprivation opportunity for a hearing or panel to review the closure decision despite a provision in the Fire Code providing for the establishment of such a panel. Thus, we hold that the circuit court was correct as a matter of law that the City violated Alexander Apartments' due-process rights under the Arkansas Constitution because it failed to provide a pre- or postdeprivation mechanism for challenging the closure. We affirm its grant of summary judgment to Alexander Apartments.

2. *Tenants*

In granting the tenants' and ACO's summary-judgment motion on their due-process claim, the circuit court found,

> The letter to Bolden from Fire Chief Summers was delivered to the tenants of Alexander Apartments on December 21, 2015, by wedging a copy in the door jam[b] of each apartment unit. Also delivered to the tenants by the same method on that day was a letter from Andre Bernard, Director of the City of Little Rock's Department of Housing & Neighborhood Programs. Bernard's letter was dated December 21, 2015, and was directed to "Tenants of Alexander Apartments." Bernard's letter informed the tenants that the City of Little Rock Fire Department had ordered operation of the apartment complex to cease until all building [sic] were brought into compliance, and told the tenants that they had until 5:00 p.m. on December 28, 2015, to vacate the premises. The letter also provided a phone number whereby the tenants could contact Department of Housing & Neighborhood

and unauthorized. Therefore, we reject the City's reliance on those cases.

Programs staff "to receive information on relocation." It should be noted that neither of the letters provided to the tenants on December 21, 2015, provided the tenants with any mechanism for appealing the condemnation of the property by the City or for appealing the City's decision to remove them from the property.

It found that the City had violated the tenants' due-process rights under the Arkansas Constitution by failing to provide them with predeprivation notice of a procedure to challenge the City's actions and by failing to provide them with an opportunity for a postdeprivation hearing. It enjoined the City from depriving tenants of their property rights without adequate notice, "which is to include a procedure to challenge the City's actions, and an opportunity to have a pre-deprivation or post-deprivation hearing."

We agree with the circuit court's finding that the City violated the tenants' due-process rights under the Arkansas Constitution. We have held that a tenant is not an invitee on his or her landlord's premises but has a right equal to that of his or her landlord to exclusive possession of his or her property. *Glasgow v. Century Prop. Fund XIX*, 299 Ark. 221, 222, 772 S.W.2d 312, 312 (1989). Thus, the tenants had a property interest in the exclusive possession of their apartments. The letter and notice instructing them to vacate by, and that utilities would be turned off on, December 28, 2015, interfered with that exclusive possession. It was undisputed that the fire chief was acting under color of the Fire Code in issuing the order and that the tenants were not provided with any pre- or postdeprivation mechanism for challenging their apartments' closure. Accordingly, the tenants, like Alexander Apartments, established a valid due-process claim. *See Sanford*, 2015 Ark. 285, at 9, 467 S.W.3d at 146; *Franklin*, 267 Ark. at 316, 590 S.W.2d at 31. We therefore hold that the circuit court was correct as a matter of law that the City violated the

tenants' due-process rights under the Arkansas Constitution, and we affirm its grant of summary judgment.

## B. Fire Code Constitutionality

The City next argues that the circuit court erred in ruling that Vol. 1 § 108.1 of the Fire Code was unconstitutional. On November 3, 2017, however, the circuit court entered an order clarifying that it did "not find that Section 108.1 of Volume 1 of the Arkansas Fire Prevention Code (2012 version) is unconstitutional as written and as promulgated by the Director of the Department of Arkansas State Police . . .." Because there is no ruling for us to review, we do not address this point on appeal.

## C. Damages

For its third point on appeal, the City challenges the awards of damages to Alexander Apartments and the tenants. The City claims that Alexander Apartments' damages for lost profits and mitigation and the tenants' compensatory damages were speculative and excessive.

### 1. *Standard of review*

The standard of review in a case where damages are alleged to be excessive is whether there is substantial evidence to support the verdict. *See Allstate Ins. Co. v. Dodson*, 2011 Ark. 19, at 14–15, 376 S.W.3d 414, 425. Damages will not be allowed that are speculative, resting only upon conjectural evidence or the opinion of the parties. *See Mine Creek Contractors, Inc. v. Grandstaff*, 300 Ark. 516, 522, 780 S.W.2d 543, 545 (1989). When an award of damages is alleged to be excessive, we review the proof and all reasonable inferences most favorably to the appellee and determine whether the verdict is so great as to shock the conscience of

12

the court or demonstrate passion or prejudice on the part of the trier of fact. *See Carr v. Nance*, 2010 Ark. 497, at 25, 370 S.W.3d 826, 841.

## 2. *Alexander Apartments*

The City argues that the circuit court erred in awarding Alexander Apartments damages in the amount of $432,744.33, contending that it failed to prove the extent of profits lost as a result of the City's actions and that Alexander Apartments' payment of tenants' electricity bills was a marketing ploy rather than mitigation of damages.

Lost profits must be proved by evidence that makes it reasonably certain the profits would have been made had the other party carried out his or her contract. *See Am. Fid. Fire Ins. Co. v. Kennedy Bros. Constr.*, 282 Ark. 545, 546, 670 S.W.2d 798, 799 (1984). When a party embarks on the enterprise of recovering anticipated profits, he or she must present a reasonably complete set of figures and not leave the fact-finder to speculate as to whether there could have been any profits. *Id.*, 670 S.W.2d at 799.

The following testimony is relevant to this point on appeal. At the trial on damages, Jason Bolden testified that, prior to the City's actions in December 2015, the complex had ninety rented apartments. By January 2016, the occupancy had dropped to thirty-two rented apartments. Bolden testified that he believed this to be an accurate number of units that were vacated after the actions of the City.

Willie Carpenter, a resource-specialist supervisor for the City, testified that he contacted tenants in seventy-five or eighty units after the closure order was distributed. He explained that he and other resource specialists spent two days beginning the process of

13

relocating tenants. He agreed that it was fair to say that they "[were] putting forth 100 percent effort to get everyone relocated by Monday."

Both the City and Alexander Apartments presented expert testimony on the issue of damages owed to Alexander Apartments. Both experts agreed that Alexander Apartments suffered economic loss, but they differed as to the amount of that loss. Alexander Apartments called Ralph Scott, Jr., Ph.D., who testified that the target occupancy rate for Alexander Apartments was 88.2 percent, which was the average occupancy rate between the date Alexander Apartments bought the complex and the December 2015 closure order. Dr. Scott testified that 88.2 percent was the accurate rate because it reflected the historic performance of the complex between the time Alexander Apartments bought it and December 2015. He concluded that because of the City's actions, Alexander Apartments would incur losses of $414,758.67 through March 2018 when the complex would reach its prior occupancy rate of 88.2 percent. Dr. Scott also opined that the damages award should include the amount Alexander Apartments was paying for some tenants' electric bills to try to increase occupancy. He concluded that Alexander Apartments should be reimbursed $98,436.24 for paying those electric bills for ten years beginning in September 2016.

James Metzger, the City's expert witness, based his conclusions on a target occupancy rate of 72 percent. That was the average occupancy rate at the complex for a one-year period beginning in September 2016, which was nine months after the City's closure actions. Metzger contended that 72 percent was the appropriate rate because it reflected a more recent time period than Dr. Scott's target occupancy rate, and Metzger opined that the 72 percent rate had been met in August 2017. Metzger concluded that Alexander

14

Apartments lost revenue in the amount of $143,976.86 through July 2017, the month he opined that the complex reached 72 percent occupancy. In Metzger's opinion, payments for tenants' electric bills should not have been included in the damages award because Alexander Apartments paid those bills voluntarily for marketing purposes.

The circuit court found that there was substantial evidence of the City's aggressive efforts to move the tenants out and shut down the complex even after Alexander Apartments filed its lawsuit. It found that, without due process of law, these actions led to tenants' vacating the complex. It further found "that 88.2 [percent] is the appropriate target occupancy rate, as it reflects the average occupancy rate and performance of Alexander Apartments from the beginning of Plaintiff's ownership until Defendant attempted to close the complex."

The circuit court also awarded mitigation damages to Alexander Apartments for its payment of tenants' electric bills from September 2016 through March 2019, totaling $20,210.19. It explained that "[t]his period of one year past the month Plaintiff reached the target 88.2 [percent] occupancy rate should be sufficient to allow Plaintiff time to make other adjustments to its leasing policies to maintain its occupancy rate and revenue." The circuit court concluded that

> the lost revenue calculations of Dr. Scott are accurate, with two exceptions: (1) the Court reduces the total amount by $1,800 to reflect the difference in using fractional versus whole numbers in the calculations, and (2) the Court deducts a $424.53 error in Plaintiff's expert's calculations. Plaintiff's lost revenue amounts to $412,534.14. Adding the $20,210.19 for expenses Plaintiff incurred to mitigate its damages brings Plaintiff's total damages to $432,744.33.

Viewing the evidence in the light most favorable to Alexander Apartments, we agree that substantial evidence supports the circuit court's award of lost-profit and mitigation

15

damages to Alexander Apartments in the amount of $432,744.33. Here, Bolden testified that there was an immediate loss of fifty-eight occupied units following the City's actions in December 2015. That loss, coupled with the City's aggressive efforts to relocate tenants, supports the circuit court's conclusion that the City's actions without any due process of law led to tenants' vacating the complex.

As to the method and calculation of lost-profit damages, the circuit court credited Dr. Scott's testimony over Metzger's. It also credited Dr. Scott's testimony that mitigation damages were proper. The sole province of the fact-finder is to determine not merely the credibility of the witnesses, but the weight and value of their testimony. *See Bell v. Darwin*, 327 Ark. 298, 301, 937 S.W.2d 665, 666 (1997). Additionally, expert testimony qualifies as substantial evidence unless it is shown that the opinion is without reasonable basis. *See Ozark Gas Pipeline Corp. v. Ark. Pub. Serv. Comm'n*, 342 Ark. 591, 606, 29 S.W.3d 730, 738 (2000). The City has failed to show that Dr. Scott's testimony, which was credited by the circuit court, lacked a reasonable basis. Accordingly, we hold that substantial evidence supports the circuit court's award of damages to Alexander Apartments in the amount of $432,744.33, and we affirm that award.

### 3. *Tenants*

Lastly, the City contends that the tenants' awards for compensatory damages were excessive and that they did not immediately leave the complex despite the TRO. The City argues that, consequently, the considerations listed by the circuit court in support of its damages awards—including mental/emotional distress, adverse health effects, and hardships

concerning the circumstances of the tenants' moves from the complex—were not caused by any December 2015 due-process violations.

Compensatory damages under the ACRA include elements of mental anguish, loss of dignity and other intangible injuries. Ark. Code Ann. § 16-123-102(2) (Repl. 2006). Compensatory damages are awarded for the purpose of making the injured party whole, as nearly as possible. *See Bayer CropScience LP v. Schafer*, 2011 Ark. 518, at 12, 385 S.W.3d 822, 831. Although a party requesting emotional-distress damages must present proof of a genuine injury, that burden may be met by the party's own testimony and the circumstances of the case. *See Kim v. Nash Finch Co.*, 123 F.3d 1046, 1065 (8th Cir. 1997).

In this instance, the circuit court ruled that the tenants were "entitled to damages for severe stress, mental/emotional distress, physical ailments, and adverse health effects as a result of the City's actions that were taken without any due process of law." The circuit court awarded compensatory damages in the amounts of $25,000 to Melody Branch, $10,000 to Ingram Murphy, and $8,500 each to Linda Wheeler and Carolyn Ford.

Here, the circuit court erroneously considered events and circumstances unrelated to the City's December 2015 due-process violations in determining the tenants' awards of damages. Much of the evidence recounted by the circuit court about mental anguish and emotional distress "as a result of [the City's] actions" lacked a causal connection to the violations. Specifically, Branch's testimony about distress caused by a February 2016 gas leak and Wheeler's distress over being forced to vacate her apartment in February 2016 due to that same gas leak were not causally connected to the December 2015 due-process violations. The February 2016 gas leak was a separate incident, and the circuit court's order

17

granting summary judgment to the tenants and ACO contained no findings of due-process violations associated with that leak.[7] Additionally, the record reflects that Ford moved from her apartment in November 2016 because of water-leak damage and a sewer back-up. The circuit court's findings as to Murphy included medical conditions that she reported had worsened as a result of the closure notice, but there is no evidence that the worsened medical conditions were caused by the closure.[8]

This court has stated that the award of damages must be causally connected to the City's due-process violations. *See, e.g.*, *Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 738, 74 S.W.3d 634, 655 (2002); *Christmas v. Raley*, 260 Ark. 150, 160, 539 S.W.2d 405, 411 (1976). For the foregoing reasons, we hold that the circuit court considered events and circumstances unrelated to those violations in determining the tenants' damages awards. Thus, we reverse the circuit court's order on the tenants' damages and remand for consideration of the tenants' damages resulting only from the City's December 2015 due-process violations.

Because we reverse and remand on the tenants' damages, we do not address the City's argument that the individual damages awards to the tenants were excessive.

Affirmed in part; reversed and remanded in part.

---

[7]In fact, after the tenants and ACO filed a motion for contempt because gas had been turned off in certain buildings in response to the February 2016 leak, the circuit court entered an agreed order on February 19, 2016, noting that the City agreed to have the gas turned back on and that "[s]uch an act by the City shall not be deemed an intentional act, or actions, with deliberate indifference as to providing gas back to the buildings."

[8]By contrast, the circuit court also noted Wheeler's testimony that she "was eventually diagnosed with severe manic depression as a result of this experience, but the record lacks sufficient evidence that this condition was caused by the City's actions."

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** The majority errs by failing to address the argument raised by City of Little Rock (the "City") concerning the constitutionality of Vol. 1, § 108.1 of the Arkansas Fire Prevention Code and the City's ordinance adopting it (the Fire Code). The majority disposes of this issue, by a procedural bar, asserting that "[b]ecause there is no ruling for us to review, we do not address this point on appeal." This disposition is inconsistent with the record and even language found in the majority opinion.

The majority ignores the fact that the relief granted to Alexander Apartments and to the tenants was premised on the City having acted by authority of the Code, which did not provide a method for the aggrieved parties to challenge a deprivation of property authorized by the Fire Code. The majority states:

> On July 10, the circuit court found that (1) the City violated the tenants' state due-process rights by failing to provide predeprivation notice of a procedure to challenge the City's actions and by failing to provide the tenants with an opportunity for a postdeprivation hearing, and (2) *the Arkansas Fire Prevention Code ("Fire Code") violates the tenants' state due-process rights because it does not establish any mechanism for review of decisions made by the City's fire officials.* The circuit court also enjoined the City from depriving tenants of their property rights without adequate notice and an opportunity for a pre- or postdeprivation hearing.

(Emphasis added.) How is a finding that the Fire Code violates state due-process rights anything but a ruling on the constitutionality of the Fire Code? The finding does not state that the City misapplied the Fire Code to violate the tenants' constitutional rights; the circuit court finds constitutional deficiencies in the Fire Code itself. Accordingly, we should decide this question on the merits.

I respectfully dissent.

19

*Sherri Latimer* and *Shawn Overton*, Office of the City Attorney, for appellant.

*Quattlebaum, Grooms & Tull PLLC*, by: *Michael N. Shannon*, for appellee Alexander Apartments, LLC.

*Jason Auer*, Legal Aid of Arkansas, for intervenor Ingram Murphy.

*Dustin A. Duke* and *Kendall Lewellen*, Center for AR Legal Services, for intervenors AR Community Organizations, Carolyn Ford, and Linda Wheeler.

*Amy Pritchard*, UALR Bowen Legal Clinic; and *Impact Law, PLLC*, by: *Kyla Farler*, for intervenor Melody Branch.